# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARK ALLEN WASMUTH, A living Immortal Spiritual Being, MARK ALLEN WASMUTH, A living physical man, MEREDITH PHILLIPPI WASMUTH, A living Immortal Spiritual Being, MEREDITH PHILLIPPI WASMUTH, A living physical woman,

        Plaintiffs,

v.

SANJIV DAS, Acting artificially as a ordinary/officer/president for CitiMortgage Inc., PAUL INCE, Acting artificially as a ordinary/officer/CFO for CitiMortgage Inc., JERRY OCHELTREE, Acting artificially as a ordinary/officer/president for First Bank Inc., ERIC P. CREDLE, Acting artificially as a ordinary/ officers for First Bank Inc., JOHN WALSH, Acting artificially as an ordinary/Comptroller of the Currency, BILL BECKMANN, Acting artificially as a ordinary/officers for MERS, MARIA LEONOR GERHOLDT, Acting artificially as officers for Nationwide Title Clearing and agent for the State of Florida, DONALD R. KIMBLE, Acting artificially as a ordinary/ officer for Huntington Bancshares Inc., STEPHEN D. STEINOUR, Acting artificially as a ordinary/officer for Huntington Bancshares Inc., MARY JO MCGOWAN, Acting artificially for Nationwide Title Clearing, MARY JO MCGOWAN, Acting artificially as a ordinary/ officers for Huntington Bank Shares,

        Defendants.

1:11CV1013

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on: (i) Defendants Beckmann, Das and Ince's motions to dismiss (docket entry 11) and for protective order (docket entry 12), (ii) Defendants Credle and Ocheltree's motion to dismiss, motion for protective order, motion to strike and motion for sanctions[1] (originally filed in state court, *see* docket entries 22-2; 22-21), (iii) Defendants United States and John Walsh's ("Federal Defendants") motion to dismiss, or in the alternative for summary judgment (docket entry 25), (iv) Defendants Kimble and Steinour's motion to dismiss for lack of personal jurisdiction and motion for protective order (originally filed in state court, *see* docket entries 30-2, 3; 30-5), and (v) Defendants United States and John Walsh's motion to set aside state court entry of default and default judgment (docket entry 38).

This case has a tortured history of multiple actions in multiple forums, but at its heart it involves a mortgage foreclosure action. Plaintiffs Mark Allen Wasmuth and Meredith Phillippi Wasmuth, proceeding *pro se*, filed this action against Defendants in the General Court of Justice, District Court Division, Chatham County, North Carolina on September 30, 2011. On November 21, 2011, the action was removed to this court pursuant to 28 U.S.C. §§ 1346(b)(1), 1441, 1442, and 1446 on the grounds that Defendant John Walsh was sued in his official capacity as Comptroller of the Currency. For the reasons that follow, this court will recommend that the Federal Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) be granted. Because the jurisdiction of this court was based on 28 U.S.C.

---

[1] Defendants Das, Ince and Beckman and Kimble and Steinour joined in Defendants Credle and Ocheltree's motion for sanctions. (*See* Docket Entries 40, 44.)

§ 1346(b), if the court accepts the recommendation that the Federal Defendants be dismissed, the United States will no longer be a party. None of the remaining parties has asserted an independent basis for federal jurisdiction. Accordingly, this court recommends that the action be remanded back to state court. Additionally, it is recommended that the motion to set aside the entry of default and default judgment be granted.

## I. BACKGROUND

The complaint filed in this action appears to be a continuation of a five-year process of frivolous and abusive filings made by Plaintiffs Mark Allen Wasmuth and Meredith Phillippi Wasmuth which have been repeatedly rejected by other courts and which have resulted in sanctions, judgments and related orders being entered against Plaintiffs. While a detailed recitation is not necessary, in order to set forth the relevant background facts of this case, the court takes judicial notice, pursuant to Rule 201(b) of the Federal Rules of Evidence, of the court record and filings by Plaintiffs in other matters. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("[T]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records."); *Ward v. Keybank Nat. Ass'n*, No. 1:03CV1124, 2005 WL 1118076, *1 (May 10, 2006) ("Here, the filings in the prior suit are matters of public record, serve as the underlying basis for this lawsuit, and the fact of those filings, rather than their veracity, are not subject to reasonable dispute by either party. Under the circumstances, judicial notice is proper."); *Williams v. Chase Manhattan Mortg. Corp.*, No. Civ. 1:04CV199, 2005 WL 2544585, *6 (W.D.N.C. Oct. 11, 2005) ("... this Court has previously approved, in appropriate circumstances, of taking judicial notice of both the record in the instant case and the record in any underlying litigation without converting a

3

motion to dismiss under Rule 12(b)(6) into a motion for summary judgment under Rule 56(c).").

### A. First Bank

Between 2003 and 2005, Plaintiffs and their company, Law Holdings, LLC, executed and guaranteed at least seven loans made by First Bank. (Docket Entry 1-12; 22-3 at 1-6.) Several of these First Bank loans were secured by real and personal property, which included a motor coach, automobile and trailer. (Docket Entry 22-7, ¶¶ 5-6, 14-15, 22-23.) After Plaintiffs defaulted on the First Bank loans, First Bank filed a complaint in Wake County Superior Court on May 29, 2007 seeking money damages and possession of the collateral. (Docket Entry 22-7.) In addition to its underlying claims in the state court, First Bank filed an ancillary claim and delivery proceeding seeking possession of its collateral for those obligations. On June 28, 2007, the state court entered its Supplemental Findings on Application for Claim and Delivery Order, finding probable cause for the issuance of an Order of Seizure with respect to three vehicles as collateral. (Docket Entry 22-3.) On November 12, 2008, the state court issued its second order of seizure with respect to the collateral. *Id.* Despite the issuance of the notice of hearing in claim and delivery and the order of seizure, First Bank and the Chatham County Sheriff were unable to locate the collateral. Mr. Wasmuth gave various inconsistent statements under oath about the location of the collateral. At an August 4, 2009, bankruptcy hearing, Mr. Wasmuth testified that he might be able to "arrange" for the return of the collateral to First Bank. In response to this testimony, the Court stated:

> The bargaining by Mr. Wasmuth is offensive to this Court. Bargaining about helping to find an asset of the estate which you have an obligation to give

4

back, Mr. Wasmuth, is offensive and could well be the subject of some sort of adversary proceeding to deny your discharge.

(Docket Entry 22-3 ¶ 55 and August Hearing Transcript at 73.) On February 17, 2011, First Bank obtained a judgment in the state court action in the amount of $416,821.07, plus interest and attorneys' fees. (Docket Entry 22-19.) The judgment has not been satisfied.

### B. Foreclosure Action (Huntington Bank/CitiMortgage)

Plaintiffs obtained a mortgage loan for their current residence with Union Federal Bank of Indianapolis and secured the loan with a promissory note ("the Note") dated January 8, 2003. (Docket Entry 1-5.) Repayment of the Note was secured by a deed of trust recorded in Deed Book 990 at Page 360 of the Chatham County Registry of Deeds ("the Deed of Trust"). (Docket Entry 1-6.) Huntington National Bank became the servicer of Plaintiffs' mortgage on September 21, 2007. The servicing rights with respect to Plaintiffs' mortgage loan were subsequently assigned and transferred to other financial institutions, with the last such servicer being CitiMortgage, Inc. Following Plaintiffs' default in repayment, CitiMortgage commenced a foreclosure action in Chatham County Superior Court on June 22, 2007.

The foreclosure action remains pending today largely because of Plaintiffs' actions in using the civil court system and the bankruptcy courts to avoid a foreclosure sale. Plaintiffs filed suit against CitiMortgage in Chatham County Superior Court on December 10, 2010 but voluntarily dismissed the action on January 14, 2011. Additionally, as detailed below, each of the four bankruptcy actions filed by Plaintiffs resulted in the imposition of an automatic stay, stalling the foreclosure action.

5

## C. Four Bankruptcy Proceedings

On the same day the state court entered its Supplemental Findings in the First Bank proceedings, Plaintiffs filed their first Chapter 13 bankruptcy petition in the Eastern District of North Carolina (Case No. 07-01394-5-ATS). The Standing Trustee filed a motion to dismiss, which was granted by order dated October 2, 2007. (Docket Entry 22-3 ¶ 7.) Plaintiffs then commenced a second bankruptcy action, also in the Eastern District of North Carolina, on January 21, 2008 (Case No. 08-00406-8-ATS). (*Id.*) In this bankruptcy proceeding, Mr. Wasmuth filed, inter alia: (a) multiple self-created bonds, which he asserted satisfied all his obligations to his creditors and to the bankruptcy trustee; (b) additional incomprehensible documents purporting to be Bonded Promissory Notes in the amount of $10,000,000; and (c) multiple separate documents titled Affidavit of Negative Averment, Opportunity to Cure and Counterclaim, in which Plaintiffs apparently: (i) sought various damages "in admiralty" from First Bank, Carmax, the Chatham County Sheriff's Department, counsel for CitiMortgage, the CEO of CitiBank, the Clerk for the United States Bankruptcy Court and others, (ii) sought the appointment of CitiMortgage's counsel as his fiduciary, and (iii) indicated that Wasmuth was a "documented vessel under United States registry." (Docket Entry 22-3 ¶¶ 8-22.) Following the dismissal of this second bankruptcy action, Mr. Wasmuth continued to file "Affidavits of Negative Averments" purporting to name, among others, First Bank. (Docket Entry 22-3 ¶¶ 17-18.) Mr. Wasmuth also filed Demands for Payment against those named in his Affidavits of Negative Averments in which he sought to recover amounts in excess of $5,300,300,000. (Docket Entry 22-3 ¶¶ 19-22.)

6

Plaintiffs next commenced a Chapter 11 bankruptcy proceeding in the Middle District of North Carolina on March 2, 2009 (Case No. 09-80353). (Docket Entry 22-3 ¶ 29.) As part of that proceeding, Mr. Wasmuth served upon First Bank and others "Interrogatories, Requests for Admissions of Fact and Genuineness of Documents and Proof of Claim and Request for Production of Documents." These requests were each approximately eighty pages long and contained 255 purported Interrogatories, 171 Requests for Admission and fifty-two Requests for Production. These requests did not identify any relevance to any relationship between First Bank and Plaintiffs.

On August 7, 2009, the bankruptcy court entered a protective order, directing First Bank (and others) to answer only a handful of Plaintiffs' discovery requests and prohibiting Plaintiffs from serving any further discovery without prior court approval. (Docket Entry 22-3 ¶ 37.) Mr. Wasmuth filed a number of other documents in the third bankruptcy, including but not limited to (a) an August 26, 2009 document entitled "Demand for Payment" against First Bank and its officers and counsel, asserting a demand for payment of $21,360,430,733.33; (b) a September 1, 2009 document entitled "Final Demand for Payment" against CitiMortgage, CitiBank, and its officers and counsel, asserting a demand for payment of $10,564,060,000; (c) a September 15, 2009 document entitled "Second Demand for Payment" against First Bank and its officers and counsel, asserting a demand for payment of $21,360,430,733.33; and (d) an October 9, 2009 document entitled Final Demand for Payment against First Bank, its officers and counsel, asserting a demand for payment in the amount of $21,360,430,733.33. (Docket Entry 22-3 ¶ 61.) On January 5, 2010, First Bank filed a motion for monetary sanctions and a permanent injunction pursuant

7

to Fed. R. Bankr. P. 9011 and 9104. (Docket Entry 22-3). On February 10, 2010, United States Bankruptcy Judge Thomas W. Waldrep, Jr. issued an order enjoining Plaintiffs from filing "any liens against First Bank, its officers, employees, or counsel." (Docket Entry 22-4).

After Judge Waldrep's order was entered, the third bankruptcy was converted to a Chapter 7 case, and the trustee brought an adversary proceeding against Plaintiffs seeking to bar Plaintiffs' bankruptcy discharge for, among other things, their refusal to obey lawful orders of the court. (Docket Entry 22-5.) On October 22, 2010, the bankruptcy court entered an order denying Plaintiffs' discharge pursuant to 11 U.S.C. §§ 727(a)(4)(D) and 727(a)(6). The third bankruptcy action was subsequently dismissed on December 8, 2010.

On April 18, 2011, Plaintiffs commenced a fourth bankruptcy action, a Chapter 11 proceeding, in the Middle District of North Carolina (Case No. 11-80633). On June 21, 2011, the bankruptcy court dismissed the fourth bankruptcy, with prejudice, and imposed a two-year ban preventing Plaintiffs from filing any further bankruptcy petitions. (Docket Entry 22-6.) In its order, the court stated:

> The record indicates that the Debtors filed this Chapter 11 case in subjective bad faith. Among other factors . . . the Debtors' previous Chapter 11 case was converted to Chapter 7, and then dismissed after the Debtors failed to attend a 341 meeting, which was scheduled 7 separate times, and to otherwise cooperate with the Trustee. In the present case, the Debtors' petitions and schedules are incomplete; however the schedules state that the Debtors claim a first lien in their own property, and schedule a $45,000,000.00 claim against two creditors.
>
> The Debtors' serial filing of Chapter 11 petitions, without a meaningful attempt to comply with the orders of this Court or the Bankruptcy Code and its policies, constitutes bad faith and an abuse of the bankruptcy process. Cause exists to issue a two year ban to prevent these Debtors from filing another Chapter 11 bankruptcy case in that time.

(Docket Entry 22-6.)

8

### D. Present Action

Plaintiffs commenced the present action by the filing of a "complaint"[2] in the General Court of Justice, District Court Division of Chatham County on September 30, 2011. A civil summons to each named defendant was issued the same day. (Docket Entry 22-1.) The complaint itself is, for the most part, confusing and nonsensical. For example, the complaint states, among other things:

> 1. This Suit in the Law, being a scripted living creation by the spoken truth of the man, mark allen wasmuth, being no different than the spoken Word of the Divine Creator, being of the same One Living Spirit, shall be the Superior Bond for this in/under the living Law. . . . So shall this suit be now living and bonded, as it is underwritten by the Divine Creator for all Immortal Spiritual Beings, up and until the time I speak not of the truth as I believe it to be, in {his} presence, concerning this suit in the living law.
>
> * * *
>
> 6. Respondents . . . are men with arms and legs, act as officers of an artificial corporation . . . a bank chartered to do business by the North Carolina Banking Commissions each and every one operating under the Crown. . .
>
> * * *
>
> 17. Suitor{s} know that there have been no Judicial Courts or Judges in America since 1789.
>
> * * *
>
> 63. Let it be known to all assembled, **TO THIS PRONOUNCED TRUTH**, the Suitor{s} shall not appear in this court, however, shall be present in proper form as a living physical man by duality of the flesh, the mind, the soul and reborn of the immortal living spirit, collectively fulfilling the supreme living office of man and/or woman. For and on the court record, so shall it be the truth and facts unless a man or woman refutes by their own personal and spiritual liability.

---

[2] Plaintiffs entitled their initiating document in state court "testimonium of veritas." (Docket Entry 5.)

(Docket Entry 5.) Plaintiffs then proceed to assert eleven purported claims, including violation of "Oath of Office;" conflict of interest; violation of the 1864 Currency Act; failure to give deposit receipts; conversion; "[r]espondents never loan money;" unjust enrichment; and "securitization of the note." (Id. at 20-22.)

Defendants Das, Ince and Beckman are employees and officers of CitiMortgage. Defendants Ocheltree and Credle are employees and officers of First Bank. Defendants Kimble and Steinour are employees and officers of Huntington Bank. Defendant John Walsh is the Comptroller of the Currency.

The complaint alleges that a promissory note made by Plaintiffs was accepted by Defendants, "acting through their artificial corporations, doing business as a bank, accepted [Plaintiffs'] Promissory Note and deposited it into an account with [their] name on it as Cash," and that "new Money was created with [their] signature and given back to [them] in the form of a Loan." (Compl., ¶ 38.) It goes on to allege "on December 6, 2010 [Plaintiffs] caused to be sent a private signed instrument to [Defendants] Sanjiv Das and Paul Ince to pay off the purported loan but they will not credit [their] account." (Id. ¶ 47.) The complaint further alleges that Defendants "tried to force [Plaintiffs] to pay debt in a particular kind of Currency . . ." (Id. ¶ 48.)[3] According to Plaintiffs, Defendants Das and Ince "are seeking to gain unjust enrichment by accepting payment from [Plaintiffs] and not crediting account as required by law." (Id. at 22.) Plaintiffs allege that Defendants Ocheltree, Credle, Das, Beckman and Ince violated the 1864 Currency Act, failed to give

---

[3] Plaintiffs raised similar allegations in their third bankruptcy proceeding, where, during a hearing the Court stated: "Mr. Wasmuth, you've either misled yourself or you've been misled as to what the law is in this country. Your position is nonsense." (Docket Entry 22-3 ¶ 59.)

Plaintiffs a deposit receipt for their promissory note, converted Plaintiffs' promissory note and failed to actually lend Plaintiffs any money via their promissory note. (Compl. at 22-23.) Plaintiffs also allege that Defendant Walsh violated his oath of office and federal law, including the National Currency Act of 1864, by failing to "investigate the banking practices of Citimortgage Inc. and First Bank Inc., artificial corporation" for violations of federal law that Mr. Wasmuth had identified in his prior communications with the Comptroller General. (Docket Entry 5 at 22, Claim X.)

Defendants have all filed motions to dismiss as well as motions for protective orders, both in this court and in state court prior to removal to this court. As noted above, the action was removed to this court on November 21, 2011. On February 1, 2012, Plaintiff filed a "Notice of Clarification for Restrictive Special Visitation and Foreign Law Venue." (Docket Entry 37.)[4] Through this filing, the Federal Defendants learned that on November 17, 2011, an Assistant Clerk in Chatham County District Court had entered an Entry of Default and Default Judgment against Defendant Walsh in the amount of $1,178,100.00 (Docket Entry 37-2.) On February 6, 2012, the Federal Defendants filed a motion to set

---

[4] To the extent possible, this document is filled with even more nonsensical language than other filings made by Plaintiffs. As best the court can glean from this filing, Plaintiffs are attempting to object to the removal of this action to federal court. (*See* Docket Entry 37.) Among other language, Plaintiffs state: "Please take further notice that the submission of this NOTICE OF CLARIFICATION for SPECIAL RESTRICTIVE VISITATION and FOREIGN LAW VENUE constitutes only a SPECIAL VISITATION to a FOREIGN LAW VENUE and is not to be deemed a consent, waiver or permission to change venue of the original suit filed by Suitor{s}, September 30, 2011, on Chatham county in the original magisterial-district of tens{s}. The (this) court created at the establishment of the state known as North Carolina and county circa November 21, 1789. It now appears the only avenue to a just remedy in the law is through a Petition to the 'court of the King's Bench' and a Court of Inquiry for the libel actions of officers of the Military Courts, by which all B.A.R. Attorneys are subject to the Military Courts." (*Id.* at 2-3.)

11

aside the state court entry of default and entry of default judgment pursuant to Fed. R. Civ. P. 55(c) and 60(b). (Docket Entry 38.)

## II. DISCUSSION

### A. Motion to Set Aside Default Judgment

Federal Defendants have moved to set aside the state court entry of default and default judgment. (Docket Entry 38.) As noted above, on November 17, 2011, an Assistant Clerk in Chatham County District Court apparently filed an entry of default and default judgment against Federal Defendant John Walsh. (*See* Docket Entry 37-2.) The case was removed to this court four days later, on November 21, 2011, and the court granted an extension of time allowing Defendant Walsh until December 21, 2011, to file an answer or otherwise plead. Federal Defendants only learned of the default judgment through Plaintiffs' filing, in this court, of a "Notice of Clarification for Restrictive Special Visitation and Foreign Venue Law" on February 1, 2012. (Docket Entry 37.)

An entry of default or default judgment in state court does not prevent removal of an action to federal court. *See Hawes v. Cart Products, Inc.*, 386 F. Supp. 2d 681, 686 (D.S.C. 2005) (citing *Harter v. Kernochan*, 103 U.S. 562 (1880); *Butner v. Neustadter*, 324 F.2d 783 (9th Cir. 1963); *Munsey v. Testworth Labs*, 227 F. 2d 902 (6th Cir. 1955)). Upon removal, the Federal Rules of Civil Procedure govern all civil actions. Fed. R. Civ. P. 81(c)(1).

Default judgments are generally disfavored and may be set aside under Federal Rule of Civil Procedure 60(b). *See Tazco, Inc. v. Dir., Office of Workers' Comp. Program, U.S. Dep't of Labor*, 895 F.2d 949, 950 (4th Cir. 1990) (citing *August Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F. 2d 808, 811 (4th Cir. 1988). "It is well established that a federal

12

district court has jurisdiction to consider a motion for relief from an order of default entered in state court." *Hawes*, 386 F. Supp. 2d at 689 (citing *Harter*, 103 U.S. at 566; *French v. Hay*, 89 U.S. 238, 249 (1874); *Munsey*, 227 F. 2d at 903). When a state court lacked jurisdiction to make an entry of default, a federal court has the power to set the default entry aside. *Hawes*, 386 F. Supp. 2d at 689. Here, Federal Defendants move for relief from entry of default and default judgment pursuant to Rules 55(c) and 60(b) of the Federal Rules of Civil Procedure. (*See* Fed. Def. Br. in Supp. of Mot. to Set Aside Default, Docket Entry 39.)

Rule 55(c) states: "For good cause shown the court may set aside an entry of default. . . ." Fed. R. Civ. P. 55(c). Rule 60(b) provides that a "court may relieve a party from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; . . . (4) the judgment is void; . . . or (6) any other reason that justifies relief." Fed. R. Civ. P. 60 (b)(1), (4), (6). "Where defaults and judgments thereon are at issue, Rule 60(b) must be read with due regard for Rule 55(c)." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 810 (4th Cir. 1988); see also *Colleton Prep. Academy v. Hoover Universal, Inc.*, 616 F.3d 413, 421 (4th Cir. 2010) (noting the distinction between Rule 55(c) and 60(b) motions, holding that "Rule 55(c) motions must be liberally construed to provide relief from the onerous consequences of defaults and default judgments.") The Fourth Circuit has explained that in determining whether to set aside a default judgment, a district court should consider (1) timeliness of the motion, (2) whether setting it aside would prejudice the adversary, and (3) whether a meritorious defense is presented. *Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir. 1987). Other factors may also be considered.

13

In the present case, the Federal Defendants have satisfied the requirements for setting aside the entry of default and default judgment. There is no evidence that the Federal Defendants' failure to timely file an answer to the complaint filed in state court was willful or done in bad faith. In fact, Plaintiffs have failed to establish that they properly served the United States. (*See* Fed. R. Civ. P. 4(i)(3); Declaration of Donald Osborne, Fed. Defs.' Br. in Supp. of Mot. to Set Aside Default, Ex. A, Docket Entry 39-2.) The only evidence in this case is that the Federal Defendants did not receive notice of the motion for entry of default and default judgment until after the matter was removed to this court, at which time the Federal Defendants acted diligently to attempt to set aside the default. Additionally, as set forth below, Federal Defendants have proffered evidence that they have a meritorious defense, *i.e.*, Plaintiffs' failure to exhaust administrative remedies as required under the Federal Tort Claims Act.[5] Finally, with regard to the prejudice factor, courts have held that the prejudice necessary to deny relief from a default judgment is more than "the ordinary loss of advantage that would result anytime a party loses the advantage of a judgment it (more or less easily) obtained." *Bank United v. Hamlett*, 286 B.R. 839, 842 (W.D. Va. 2002). Indeed, as noted by the Fourth Circuit, "no cognizable prejudice inheres in requiring a plaintiff *to prove* a defendant's liability, a burden every plaintiff assumes in every civil action. . . ." *Colleton Prep.*, 616 F.3d at 419 (emphasis in original). Thus, Plaintiffs must show something more, such as extra costs or loss of evidence which would result from the setting

---

[5] The Federal Defendants also argue that the complaint is subject to dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). While this court believes that this argument has merit, it is unnecessary to reach it in light of Plaintiffs' clear failure to exhaust administrative remedies.

14

aside of the entry of default and default judgment. Plaintiffs here have made no such showing.

The Federal Defendants, on the other hand, have clearly shown the existence of "mistake, inadvertence, surprise or excusable neglect," as required under Rule 60(b)(1).[6] The record shows that they were not properly served, and that they received no notice of the entry of default judgment until after the case had been removed to this court. Upon first learning of the default judgment on February 1, 2012, Federal Defendants acted promptly, by filing the instant motion five days later, on February 6, 2012. Based on the information provided by the Federal Defendants, it appears that they have satisfied the requirements of Rules 55(c) and 60(b)(1). This court should not permit its process to be used to work the substantial injustice which enforcement of the default judgment against the Federal Defendants would entail. Accordingly, it is recommended that Federal Defendants' motion to set aside the state court entry of default and default judgment be granted.

### B. Motion to Dismiss based on Failure to Exhaust Administrative Remedies under Federal Tort Claims Act

On November 21, 2011, the United States of America removed this action from the District Court of Chatham County, North Carolina, under the provisions of the Federal Tort Claim Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671, *et. seq.* Removal under these provisions was based upon a certification by the United States Attorney for this District certifying that John Walsh was acting in his official capacity within the scope of his employment as an employee of the United States as the time of the conduct alleged in the

---

[6] The Federal Defendants have likewise made a strong argument that the state court judgment is void and thus should be set aside pursuant to Rule 60(b)(4). A judgment is void if the entering court lacked jurisdiction over the parties, or when its entry violated due process. *Hamlett*, 286 B.R. at 843.

15

Complaint. (*See* Certification, Docket Entry 1-1.) The Federal Employees Liability Reform and Tort Compensation Act provides that upon certification by the Attorney General or designee that a federal employee was acting within the scope of hi office or employment at the time of the incident out of which the claim arose, any civil action alleging common law torts arising out of the incident shall be deemed an action against the United States, and the United States shall be substituted as sole defendant with respect to common law tort claims. 28 U.S.C. § 2679(d)(1)(2). Under 28 U.S.C. § 2679(d)(2), any such action pending in state court where the United States is substituted as Defendant shall be removed to a United States district court after the substitution. This case, therefore, was properly removed from state court.

In the complaint, Plaintiffs allege that Defendant Walsh, in his official capacity, refused "to enforce the Laws he has Sworn a Oath to protect." (Compl. at 6, ¶ 11.) Plaintiffs assert a "Claim of Tort" (Compl. at 12, ¶ 50) and ask that the court "shall decree a Warranted claim{s} for Torts" (Compl. at 30, ¶ 104) and that Federal Defendant Walsh "discharge/pay/settle all Torts of Errors." (Compl. at 30, ¶ 105.) Plaintiff seeks an order of this court requiring that Defendant Walsh, as Comptroller of the Currency, pay $1,178,000 to Plaintiffs. (Compl. at 24, ¶ 98.)

"Under settled principles of sovereign immunity, the United States as sovereign, is immune from suit save as it consents to be sued . . ." *United States v. Dalm*, 494 U.S. 596, 608 (1990). As the Fourth Circuit has noted:

> Sovereign immunity is presumed and cannot be overcome without an express and unequivocal statutory waiver. Further, any statutory waiver is strictly construed, with all ambiguities resolved in favor of the sovereign . . . . In addition, the Court has also interpreted this broad measure of protection as

16

extending not only to more traditional governmental entities, but to *all* agencies of the federal government.

*Research Triangle Inst. v. Bd. of Governors of the Fed. Reserve Sys.*, 132 F.3d 985, 987-88 (4th Cir. 1997). Thus, relief against the United States requires a clear waiver of sovereign immunity. *United States v. Testan*, 424 U.S. 393, 399 (1976).

The FTCA operates as a limited waiver of the United States' sovereign immunity. *See* 28 U.S.C. § 1346(b)(1), 2671-2680. In order for a district court to have jurisdiction over FTCA claims, however, the claimant must first present the claim to the appropriate federal agency, and the agency must have denied the claim. 28 U.S.C. 2675(a)[7]; 28 C.F.R. § 14.2(b)(1). "[T]he requirement of filing an administrative claim is jurisdictional and may not be waived." *Ahmed v. United States*, 30 F.3d 514, 516 (4th Cir. 1994).

A plaintiff bears the burden of proving compliance with the administrative requirements. *Kielwien v. United States*, 540 F.2d 676, 679 n. 6 (4th Cir. 1976). In this case, Plaintiffs have not alleged that they exhausted their administrative remedies. The Federal Defendants have attached to their memorandum a Declaration executed by Horace Sneed, Director of the Litigation Division in the Law Department of the Office of the Comptroller of the Currency, which certifies that no administrative claim has been filed with the agency in connection with the allegations in Plaintiffs' complaint. (Mem. Supp. Mot. to Dismiss, Ex. 2, Docket Entry 26-2.) Because the record contains no indication that Plaintiffs ever

---

[7] 28 U.S.C. § 2675(a) provides: "An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his or her employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."

17

filed an administrative claim with the Office of the Comptroller, Plaintiffs' claim against the Federal Defendants must be dismissed for lack of subject matter jurisdiction.

Having determined that Plaintiffs' claim against the United States must be dismissed, it is apparent that federal jurisdiction is lacking in this case. The only jurisdictional basis for this case to be removed from the state court was the fact that Defendant John Walsh, as Comptroller of the Currency, is a federal employee. Once the United States is dismissed from the action, Plaintiffs are left only with state claims against the other Defendants, at least some of whom are non-diverse. The Supreme Court, while noting that there is no "mandatory rule to be applied inflexibly in all cases," has stated:

> [i]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Pursuant to 28 U.S.C. § 1447(c), passed subsequent to *Carnegie-Mellon*, cases originally filed in state court must be remanded if at any time before final judgment it appears that the district court lacks subject matter jurisdiction.

The remaining Defendants, while not objecting to removal to this court, did not join in removal, and Plaintiff chose Chatham County District Court as his preferred forum. No party has alleged an alternative federal basis for this court's jurisdiction over Plaintiffs' claims against the remaining Defendants. Discovery has not begun, and this court has not devoted a substantial amount of resources to the resolution of Plaintiff's claims. Accordingly, the case should be remanded to the state court. *See Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541 (4th Cir. 2006) (noting district court's wide discretion to dismiss supplemental state law

18

claims after dismissing the federal claims). To the extent Defendants seek dismissal of Plaintiffs' state law claims it is recommended that the motions to dismiss be denied as moot, without prejudice to renewal in state court.

### III. CONCLUSION

It is clear to the court that Plaintiffs have engaged in a pattern of filing vexatious and patently frivolous litigation, calculated to harass Defendants and to abuse the judicial process. Under these circumstances, the frustration of Defendants is understandable. The fact remains, however, that once the Federal Defendants are dismissed from this action this court is without jurisdiction to hear the matter.

For the reasons stated above, **IT IS RECOMMENDED** that the court **GRANT** Federal Defendants' motions to set aside state court entry of default and entry of default judgment (Docket Entry 38) and to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction (Docket Entry 25). **IT IS FURTHER RECOMMENDED** that the action against the remaining Defendants be remanded to the Chatham County District Court for disposition of other pending motions.

_____
Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
July 9, 2013